## In re Anonymous No. 18 D.B. 78

Disciplinary Board Docket no. 18 D.B. 78.

To the honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

DOUGLAS, *Member,* February 22, 1988 — Pursuant to rule 218(c)(5) Pa.R.D.E., the disciplinary board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for reinstatement.

### HISTORY OF PROCEEDINGS

Petitioner was suspended from the practice of law by order of the Supreme Court dated May 25, 1979. This suspension was made pursuant to the emergency interim suspension provisions of rule 214 Pa.R.D.E., following the conviction of petitioner of 14 counts of making material untrue statements in property reports filed with the Department of Housing and Urban Development, six counts of fraudulent lot sales and 12 counts of mail fraud.

The Supreme Court referred the conviction to the

disciplinary board on March 10, 1978, pursuant to rule 214, Pa.R.D.E. A petition for discipline was filed by disciplinary counsel on May 23, 1979. The petition alleged that, as a result of the above mentioned criminal conviction, petitioner violated the following disciplinary rules:

"(a) D.R. 1-102(A)(4) — prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

"(b) D.R. 1-102(A)(5) — prohibiting an attorney from engaging in conduct that is prejudicial to the administration of justice; and

"(c) D.R. 1-102(A)(6) — prohibiting an attorney from engaging in any other conduct that adversely reflects on his fitness to practice law."

Disciplinary counsel alleged further that petitioner's conviction of a crime punishable for more than one year was an independent ground for discipline under rule 203(B)(1) Pa.R.D.E.

On June 18, 1979 the matter was referred to Hearing Committee'[    ] consisting of [    ]. In their report filed December 20, 1979, the hearing committee found that petitioner violated D.R. 1-102(A)(4), (5), and (6). The hearing committee recommended a four-year suspension retroactive to May 25, 1979 rather than disbarment because the conduct of petitioner did not relate to the representation of clients as an attorney.

Both petitioner and disciplinary counsel filed exceptions to the hearing committee report. Disciplinary counsel argued that disbarment was the only appropriate discipline. Petitioner argued that the facts warranted only a two-year suspension.

The disciplinary board concurred with the recommendation of the hearing committee and recommended that petitioner be suspended from the prac-

tice of law for a period of four years retroactive to May 25, 1979.

Petitioner was subsequently disbarred by order of the Supreme Court dated April 22, 1980 in accordance with rule 204(1) Pa.R.D.E.

On June 6, 1986 petitioner filed a petition for reinstatement. On June 11, 1986 the matter was referred to Hearing Committee [    ] consisting of [    ]. A hearing was held before Hearing Committee [    ] on July 30, 1986. On August 13, 1986 a petition to withdraw petition for reinstatement was received from petitioner. The petition to withdraw petition for reinstatement was granted by the board, without prejudice to petition for reinstatement in the future.

Petitioner filed the current petition for reinstatement on February 26, 1987 together with his reinstatement questionnaire. The matter was again referred to Hearing Committee [    ], made up of the same membership as in 1986. A hearing was held on April 2, 1987 before the Hearing Committee [    ].

The hearing committee filed a report on November 23, 1987. In its report the hearing committee recommended that the petition for reinstatement be denied. The panel was satisified that petitioner has the adequate moral qualifications to resume the practice of law and that he would not pose a threat to the integrity of the bar nor the administration of justice. The committee, however, expressed their belief that petitioner did not demonstrate that he meets the minimum standards of competency required to practice law despite the fact that petitioner complied with the requirements of rule 89.279 of the disciplinary board rules. The committee recommended that petitioner engage in further legal study as well as a tutorial program.

## FINDINGS OF FACT

(1) Petitioner, [      ], graduated from the [      ] School of Law in 1953. Petitioner served as an assistant U.S. attorney in the [      ] District of Pennsylvania from 1955 until his resignation from that position in 1961.

(2) In 1963, Governor [A] appointed petitioner to the position of chief counsel of the [      ] Control Commission. Petitioner held this position until 1968.

(3) From 1968 to 1972 petitioner was a [      ] referee.

(4) Petitioner engaged in the private practice of law as a sole practitioner engaged in the private practice of law as a sole practitioner from 1961 to 1979.

(5) In 1972 petitioner became an investor in and the attorney for [B] Enterprises Inc. The corporation planned to sell 1300 lots in a development named [C] Estates. Petitioner soon became president of the corporation.

(6) While petitioner was president of the corporation, two unscrupulous salesmen absconded with the proceeds of sale of some of the lots and collected commissions on fictitious sales of lots. The acts of the salesmen and the Arab Oil Embargo created financial hardship for the corporation.

(7) As a result of the financial hardship and other difficulties the corporation experienced delays in providing a swimming pool, tennis courts, an on-site sewage disposal system, and paved streets.

(8) Between February 1973 and May 1975 petitioner filed five property disclosure reports with the Department of Housing and Urban Development containing false dates of initiation and completion of the aforementioned delayed projects. Petitioner sold

six additional lots based on the false property reports and wrote to prior purchasers urging them to purchase additional lots, also based on the false reports.

(9) Petitioner worked without pay during the corporation's times of hardship and invested more of his own money in the corporation in an attempt to salvage the corporation.

(10) On July 22, 1977, petitioner was indicted on numerous counts charged with making untrue statements of material fact in property reports filed with the Department of Housing and Urban Development, fraudulent lot sales, and mail fraud.

(11) Petitioner was prosecuted in the U.S. District Court for the [ ] District of Pennsylvania. The jury returned a verdict of guilty on December 1, 1977.

(12) The Honorable [D] sentenced petitioner to four years imprisonment and fined him $11,200.

(13) The U.S. Court of Appeals for the Third Circuit affirmed the conviction on March 29, 1979.

(14) Petitioner began serving his sentence at the federal prison camp at [E] Air Force Base on May 7, 1979. Petitioner was released on parole after serving nine months at the [E] facility.

(15) During the nine month period of incarceration, petitioner performed legal research for the staff judge advocate at [E] Air Force Base.

(16) Petitioner was suspended from the practice of law by order of the Supreme Court on May 25, 1979 pending formal proceedings to determine the extent of the final discipline to be imposed.

(17) The hearing committee and the disciplinary board both recommended that petitioner be suspended from the practice of law for a period of four years. The Supreme Court, however, disbarred petitioner by their order of April 22, 1980.

(18) Following his release from prison, petitioner

has worked as a bookkeeper and aided an attorney in collection work. Petitioner has also engaged in the sale of satellite dishes and improved real estate.

(19) Prior testimony of two character witnesses who testified on behalf of petitioner during a prior proceeding were introduced into evidence of stipulation of the parties.

(20) One of these witnesses was [F], a prominent [ ] attorney, who has been the president of the Pennsylvania Bar Association. [F] testified that in his opinion the readmission of petitioner would not have an adverse effect on the integrity of the bar and the administration of justice, nor would his readmission be subversive of the public interest. The other witness was Dr. [G], who is both a clergyman and a practicing psychotherapist with a Ph.D.

(21) Letters of recommendation from two individuals were entered into evidence on behalf of petitioner. [H], a prominent [ ] attorney and former member of the disciplinary board wrote a letter recommending that petitioner be reinstated. A letter of recommendation was also received from [I], a former [ ] County Public Defender for 10 years.

(22) [J], the Chief U.S. Probation Officer in the [ ] District of Pennsylvania, has written a letter stating that petitioner has "met all obligations of parole, paid his fine in full and was fully cooperative."

(23) Petitioner attended the Pennsylvania Bar Institute seminar at [ ] College August 13 through 16, 1986. Petitioner has rented Pennsylvania Bar Institute videos on various subjects which he viewed at home. Petitioner has subscribed to the Pennsylvania Advance Reports since August 1986.

## DISCUSSION

The disciplinary board concurs with the finding of the hearing committee that petitioner possesses

adequate moral qualifications to resume the practice of law and will not pose a threat to the integrity of the bar nor the administration of justice. Unlike the hearing committee, however, the board believes that petitioner has demonstrated that he has the competency and learning in law required for admission to practice.

The letters of recommendation and testimony on petitioner's behalf indicate that he has the moral qualifications required for admission to the practice of law and the readmission of petitioner would not be detrimental to the integrity of the bar nor the administration of justice.

The evidence suggests that petitioner is thought of highly in the community despite his "unfortunate incident." Petitioner is said to have a good reputation for honesty and integrity in the community.

Section 89.279 of the disciplinary board rules provides the requirements necessary for a disbarred attorney to demonstrate competency and learning in law. This section provides that a disbarred attorney "shall within one year preceding the filing of the petition for reinstatement take (and prior to hearing on the petition, complete) courses or lectures meeting the requirements . . . published by the Office of the Secretary."

Petitioner has complied with the provisions of section 89.279 of the disciplinary board rules by taking the Pennsylvania Bar Institute course at [ ] College and by viewing the video taped lectures on the required subjects. Petitioner, therefore, has presented clear and convincing evidence of his competency and learning in law. Section 89.279 has set forth the criteria necessary to demonstrate competency and learning in law. Absent a rule stating further criteria required to show competency and learning in law, compliance with section 89.279

should be accepted as evidence of the requisite competence and learning. Otherwise the value of the courses would be discounted.

## RECOMMENDATION

For the foregoing reasons the disciplinary board recommends that the petition for reinstatement of [petitioner] be granted. The board recommends that petitioner be directed to pay the necessary expenses incurred in the investigation and processing of this petition for reinstatement pursuant to rule 218(e), Pa.R.D.E.

## ORDER

And now, July 15, 1988, upon consideration of the report and recommendations of the disciplinary board dated February 22, 1988, the petition for reinstatement is granted.

Pursuant to rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Papadakos dissents.